IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SOUTHWEST CENTER FOR BIOLOGICAL
DIVERSITY,** a non-profit corporation, and
**SIERRA CLUB,** a non-profit corporation,

                              **Plaintiffs,**

v.                                                 CIV. No. 98-0322 LH/JHG-ACE

**BRUCE BABBITT**, Secretary of the Department
of the Interior,

                              **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' Motion for Litigation Costs, Including Attorney Fees (Docket No. 24). The Court, having considered the briefs and arguments of the parties, including the supplemental authorities submitted by the parties on September 28, 1999 and March 6, 2000, and being fully advised in the premises, concludes that the motion shall be **denied**.

1

**I. Background**

Plaintiffs filed this citizen suit under the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(1)(C), to compel Defendant to issue a final determination, pursuant to 16 U.S.C. § 1533(b)(6), on the proposed rule to list the Arkansas River shiner ("shiner") as an endangered species. Specifically, Plaintiffs alleged that Defendant failed to perform non-discretionary duties when he failed to take final regulatory action on the proposed rule to list the shiner as endangered by August 3, 1995, and to issue a final decision on designation of critical habitat by August 3, 1996.[1] This suit was initiated on March 18, 1998. On November 23, 1998, the U.S. Fish and Wildlife Service ("Service")[2] made a final determination to list the shiner as a threatened species under the ESA. 63 Fed. Reg. 64,772 (Nov. 23, 1998). Concurrently, the Service made a final determination that designation of critical habitat for the Arkansas River shiner would not be prudent, pursuant to 16 U.S.C. § 1533(a)(3). On December 16, 1998, the Court filed a joint stipulation of dismissal, retaining jurisdiction over the issue of litigation costs, including attorney fees. (Dec.16 1998 Order and Feb. 2, 1999 Order). The parties agree that, if this Court determines that Plaintiffs are entitled to recover fees, the matter must be remanded to the parties so that they may discuss the possible settlement of an appropriate fee amount.

---

[1] Plaintiffs acknowledge that the Secretary was temporarily prohibited from making any final listing or critical habitat determinations by a Congressional appropriations rider, which imposed a moratorium on such actions between the dates of April 10, 1995 and April 26, 1996. Emergency Supplemental Appropriations and Rescissions for the Department of Defense to Preserve and Enhance Military Readiness Act of 1995, Pub.L.104-6, 109 Stat. 73, 86 (1995), *discussed in Forest Guardians v. Babbitt*, 164 F.3d 1261, 1265 n.6 (10th Cir. 1998)(hereafter the "1995-96 budget moratorium").

[2] The U.S. Fish and Wildlife Service is the agency within the Department of the Interior with delegated authority to implement the ESA.

## II. Legal Standard for Awarding Attorney Fees under the ESA Citizen Suit Provision

Under the citizen suit provision of the ESA, a court may award litigation costs, including attorney fees, to a party "whenever the court determines such an award is appropriate." 16 U.S.C. § 1540(g)(4).

The Tenth Circuit addressed a similar attorney fee issue in *Powder River Basin Resource Council v. Babbitt*, 54 F.3d 1477, 1486 (10th Cir. 1995). That case involved an alleged violation under the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. § 1270(a)(2). The attorney fee provision under the SMCRA contains language identical to the applicable language under the ESA. *See* 30 U.S.C. § 1270(d). The *Powder River Basin* court held that when there has been no judicial determination on the merits, a plaintiff may prevail for attorney's fees purposes if she can show "(1) that [the] lawsuit is causally linked to securing the relief obtained and (2) that the defendant's conduct in response to the lawsuit was required by law." (*citing J & J Anderson, Inc. v. Town of Erie*, 767 F.2d 1469, 1473 (10th Cir. 1985)).[3] The *Powder Basin* case noted that even in statutes such as the one before it without a prevailing party requirement, the party requesting attorney's fees must achieve some success to be eligible for any attorney's fees award. (*citing Ruckelshaus v. Sierra Club,* 463 U.S. 680 (1983)(interpreting the then-identical language of the Clean Air Act, which analysis applies to other fee shifting statutes with a "where appropriate" standard. *Id*. at 682 n.1). "Because under either type of statute the plaintiff must be successful – and the *Nadeau* test is designed to ferret out any success by a plaintiff – we hold that the same catalyst test applies to attorney's fees requests under 30 U.S.C.

---

[3] The *J & J Anderson, Inc.* case cited the First Circuit case of *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir. 1978) as the source of this test.

§ 1270(d)."

Given this interpretation of identical language, I will apply the "catalyst test" only to the facts before me, as was done in the *Powder Basin* case.[4]

Plaintiffs state that when they submitted their 60 day notice of intent to sue the Secretary, on May 13, 1997, the Secretary had not taken action on either the listing or critical habitat determinations for the shiner. Plaintiffs maintain that the Secretary did not respond to the notice nor did he in any way indicate that he would take the required final action on the shiner. Plaintiffs contend that they consequently filed their complaint in this matter on March 18, 1998. It is their position that the Secretary's eventual response on May 22, 1998 – that he would try to act on listing the shiner by November 15, 1998, although he did not make an absolute commitment to do so – was given in the context of a motion to stay and response to Plaintiffs' motion for summary judgment in this lawsuit. The briefing on the summary judgment motion was concluded on July 10, 1998, and on August 5, 1998 this Court originally set the matter for oral argument. The Secretary thereafter provided the relief requested by Plaintiffs thereby making the case moot, at which time the parties filed a joint stipulation of dismissal on December 16, 1998. Plaintiffs maintain that this timing and chronology of events should be used to indicate that the filing of this lawsuit was a substantial catalyst or substantial factor for the Defendant's action, citing *Luethje v. Peavine School Dist. of Adair County*, 872 F.2d 352, 354 (10th Cir. 1989), as well as several other cases. Plaintiffs argue that the Court could have ruled as early as July of 1998, mandating the Secretary to comply within 30 days as requested by Plaintiffs, in which case

---

[4] Despite the Service's urging to do so, I conclude that it is unnecessary to make a determination on the issue of whether or not Plaintiffs' suit contributed significantly to the goals of the ESA.

4

there would be no question that attorney fees would be "appropriate". They contend that the fact that this Court did not act immediately and before the Secretary acted should not make the difference on this motion for litigation costs. They argue that a denial of fees in this case would deter potential plaintiffs from bringing suit against the government, which would in turn allow government inaction to go unchecked, and that it would be unfair to plaintiffs who fulfill the "private attorney general" role in enforcing the law while providing an incentive for the Secretary to make "not prudent" findings in order to moot lawsuits and avoid fee awards.

Finally, Plaintiffs argue that the Service's stated bases for its delay on the shiner, the 1995-96 budget moratorium and the Secretary's subsequent "Listing Priority Guidance," are the same bases unequivocally repudiated by the Tenth Circuit for the delay on the Rio Grande silvery minnow in the *Forest Guardian* opinion.[5]

Defendant does not dispute that Plaintiffs' claim had a legal basis and that therefore they fulfill the second element of the catalyst test, although it does dispute the first prong. Defendant argues that the Service made its final determinations on the shiner independently of this lawsuit. Defendant contends that these determinations were made pursuant to a timetable it had set and that these determinations were made in the most expedient and efficient manner practicable, thereby fulfilling all of the legal requirements for making a final determination and rendering Plaintiffs' suit moot. It is Defendant's position that Plaintiffs have not met their burden of proving that they were the catalysts behind these actions. In support of these arguments, Defendant sets forth an extensive "Chronology of Events".

The Service proposed listing the Arkansas River basin population of the Arkansas River

---

[5] 164 F.3d 1261 (10th Cir. 1998).

shiner on August 3, 1994. Fed. Reg. 39,532 (Aug. 3, 1994). Approximately four months before the August 3, 1995 final listing deadline, the 1995-96 moratorium explained in footnote 1 herein went into effect, prohibiting further work on this determination for an entire year. On April 26, 1996, the moratorium was lifted and work began on resolving a substantial backlog of mandatory duties. To prioritize the Service's listing activities "to secure the most protection for the greatest number of the most imperiled species in the least time", *Clark April 2, 1999 Decl.* at ¶ 4, the Service published new Listing Priority Guidances ("LPGs"). In its brief, the Service outlines its system and states reasons that it was unable to make a final listing decision on the shiner until November 23, 1998. The Service states that it began its analysis on the shiner as soon as staff resources became available, in April 1997, a month before the notice of intent to sue was filed in this lawsuit. At that time the Service determined that it would be appropriate to reopen the comment period on the proposed rule. Through June 1997, work continued on the compilation and analysis of comments. The advertising and notices necessary to reopen the comment period were completed. This comment period lasted from December 5, 1997 to January 5, 1998. At that time, the comments were analyzed and work begun on drafting a final determination and associated documents on the proposed rule to list the shiner. On February 2, 1998, the Field Supervisor of the Oklahoma Field Office notified the Regional Director for Region 2 that he anticipated that this draft would be completed and delivered by May 29, 1998. *Id.* at ¶ 17 and Attachment 3 thereto. This lawsuit was filed on March 17, 1998 and Plaintiff's motion for summary judgment was filed on May 6, 1998.

According to the Declaration of Jamie Rappaport Clark, Director of the Service, the Service expected the final listing determination to be completed by November 15, 1998. The

draft final rule arrived in the Service's Regional Office on July 29, 1998. *Id*. at ¶ 20. Following revision of it, it was sent to the Regional Solicitor's Office on September 16, 1998. *Id*. After returning the draft final rule to the Regional Office on October 15, 1998, and submitting to the Washington Office on November 9, 1998, the Service made its final determination to list the shiner as a threatened species on November 13, 1998. This was published in the *Federal Register* on November 23, 1998. *Id*.; 63 Fed. Reg. 64,772 (Nov. 23, 1998).

I conclude that Plaintiffs have not demonstrated that this lawsuit was a catalyst for the Service's taking final action on the shiner; accordingly they cannot show that they achieved some degree of success on the merits in their suit.

I am aware that the resource limitations experienced by the Service, discussed above, do not justify its failure to comply with mandatory, non-discretionary duties imposed by the ESA. *Forest Guardians v. Babbitt*, 164 F.3d 1261, 1266 (10th Cir. 1998). I find no dispute here that the Service was overdue in its obligations in this regard at the time that this law suit was filed. The question before me however is a different one. It is the issue of whether or not Plaintiffs have met their burden of establishing that the filing of this lawsuit meets the catalyst test. As stated above, the parties agree that the second prong of the test has been met. Consequently, I have focused on the first prong of the test: whether or not this lawsuit is causally linked to securing the relief obtained.

I have studied the relevant factual chronology here, including the 1995-96 moratorium and LPG schedule, not because I believe that the Secretary's preferred priorities justify the inaction by the Service, but rather, to determine whether or not it demonstrates that Plaintiffs' suit caused the Service to take final action. I conclude that a causal connection between the filing of the lawsuit

7

and the ultimate final action has not been established. To the contrary, the Clark Declaration establishes that the Service was working to complete a final determination on the shiner before Plaintiffs sent their notice of intent to sue letter, and well before Plaintiffs actually filed suit. The Service timetable for final determination was based on the Service's workload and available listing appropriations, and was developed independently of Plaintiffs' lawsuit. *See Clark Decl. at ¶ 22*. This was not accelerated in response to this lawsuit; this would have been contrary to the express terms of the LPG, in which the Service states its determination not to let listing priorities be driven by the exigencies of litigation rather than biological priority. *E.g.*, 63 Fed. Reg. 25,502 and 25,511 (May 8, 1998)("In no case will the Service adjust its priorities to reflect the threat or reality of litigation."). Without endorsing it, this factual sequence of events is what I rely upon for my conclusion of lack of causation. Plaintiffs have not shown that the filing of this lawsuit was a substantial factor or significant catalyst of the final action taken, nor have they shown that their suit was a necessary and important factor in issuance of the finding or timing.

I have carefully considered Plaintiffs' policy arguments that a denial of fees in this case would deter potential plaintiffs from bringing suits against the government in the future and would allow government inaction to go unchecked. While I agree that this policy is an important one, I am bound by the Tenth Circuit catalyst test. In this case, the time and sequence of factual events do not entitle Plaintiffs to recover their fees and costs, however this conclusion does not set an adverse precedent for future plaintiffs who can satisfy the catalyst test.

I am aware of the difficult burden that Plaintiffs face on this issue, particularly because so many of the operative facts are in the possession of Defendant. This does not warrant my making an assumption that because Plaintiffs' suit preceded the Service's final determination, that the suit

8

necessarily caused the Service to make the final determination.

For these reasons, I must conclude that Plaintiff's claim for litigation costs and attorney fees is unwarranted and inappropriate.

**WHEREFORE**, for the foregoing reasons I conclude that the relief sought by Plaintiffs would not be appropriate under the ESA and accordingly conclude that Plaintiffs' Motion for Litigation Costs, Including Attorney Fees (Docket No. 24) shall be **denied.**

**IT IS SO ORDERED.**

_____
**U. S. DISTRICT COURT JUDGE**